IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| **HONEYFUND.COM, INC.**, **PRIMO TAMPA, LLC**, **CHEVARA ORRIN**, and **COLLECTIVE CONCEPTS, LLC**, <br><br> Plaintiffs, <br><br> v. <br><br> **RON DESANTIS**, *in his official capacity as Governor of Florida*; **ASHLEY MOODY**, *in her official capacity as Attorney General of Florida*, **DARRICK MCGHEE**, *in his official capacity as the Chair of the Florida Commission on Human Relations,* et al. <br><br> Defendants. | Case No. 4:22-cv-227 <br><br> **DECLARATION OF SARA MARGULIS** |

I, Sara Margulis, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts in this declaration.

2. I am the co-founder and Chief Executive Officer of Honeyfund.com, Inc. ("Honeyfund"). Honeyfund is a technology platform that provides wedding registries as well as other wedding resources and advice. Over 1 million couples have used Honeyfund's online honeymoon and cash registry technology since we started in 2006. Honeyfund is based in Clearwater, Florida, and has 16 employees and 7 contractors. Our workforce is 61% women, 35% nonwhite, and 4% transgender.

1

3.      I moved my business from California to Clearwater in 2017 because of Florida's reputation as a good place to grow and innovate as a technology company.

4.      When I learned about Florida's HB 7, also known as the "Stop WOKE Act" ("the Act"), I was alarmed for a number of reasons.

5.      **First**, I feel strongly that I need to instruct my employees on some of the prohibited concepts for company culture, because it is the right thing to do, and because it is good for business. Having a strong company culture and being able to shape that culture as a CEO is key to the success of any business.

6.      By speaking at required teamwide and smaller meetings, sending office-wide communications, and through other channels, I try to instill in my employees the ways in which we can combat institutional racism and sexism in the workplace and in society.

7.      I am committed to fostering an inclusive workplace and require my employees to do the same. I seek diverse perspectives because of proven business benefits. It is essential to team wellness and business performance that diverse employees are able to work together and feel included. Team members are better able to receive feedback from each other when they understand what systems may be shaping their colleagues' perspectives. Further, I am convinced that trainings and conversations about diversity, equity and inclusion ("DEI") and sexual harassment are critical to prevent discrimination and avoid employee lawsuits against us.

8.       I require that Honeyfund strive for diversity in marketing and that diverse customers feel welcome on our platform. I instruct my employees to try to reach customers who have historically been excluded from the privilege of seeing people like themselves in marketing. It is a cornerstone of how I run my company. For example, Honeyfund celebrates the LGBTQ+ community and makes it very clear that we support their right to marry.

9.      Honeyfund also promotes efforts to address racial inequality. For example, Honeyfund spotlighted a Black couple who got married during a Black Lives Matter protest in June 2020. We were delighted to learn that they were a Honeyfund couple, and we noted in our promotion that "it was one of the most beautiful displays of love we've ever seen." I interviewed the couple on Honeyfund's YouTube channel and shared the video with Honeyfund employees. The couple talked about their experiences as Black people in the U.S., and the

challenges their immigrant families face due to their national origin.. We discussed issues of systemic racism, including how Black women are more likely to die from childbirth in this country due to systemic racism in healthcare, and how Black people are often unfairly dismissed as overreacting to racism. I spoke about how important it is to give voice to love, justice, and doing what's right to move people past their fear, toward openness to learning, to ultimately change. This is a core belief that I fear the new law bans me from expressing.

10.     It is upsetting to learn that structural inequality on the basis of race, national origin, and gender exists. For example, it is upsetting to learn how Americans have been excluded from building wealth and from workplaces based on these characteristics. But if we are so concerned with not upsetting people that we cover up history, we will never be able to address the effects of historical inequality to make the world more equitable. As a business owner, I feel a responsibility to address these issues and to empower historically oppressed groups to achieve the American dream as I have.

11.     There is a long history of bias against women in the workplace that continues today. In order to remedy that, it is key to be able to have honest and robust workplace conversations about sexism and women's empowerment, and to actively recognize and address this issue. I know based on my own life that women have a different experience in the workplace than men. Ignoring the fact of race and gender in the workplace as the Stop WOKE Act seems to require (e.g., by prohibiting the concept that "members of one race, color, sex, or national origin cannot and should not attempt to treat others without respect to race, color, sex, or national origin"), will harm my company and society. I am also worried that Honeyfund's sexual harassment trainings may not be allowed to proceed because of this.

12.     More specifically, there have been times I have had to tell an employee they needed to modify behavior after observing them privileging – or not privileging – co-workers on the basis of gender. For example, I once noticed an employee asked only female colleagues to take notes, for no good reason. In situations like this, I have to be able to be honest and to instruct employees to be mindful of gender dynamics. I also speak openly to employees about how my gender shapes my worldview. For example, on May 25, 2022, I shared with my team about how being a woman has shaped my view on gun violence. I do not know if I can continue to do any of this under the Stop WOKE Act.

13.     As a business owner, I feel that it is my responsibility to try to make society a better place, and to encourage my employees to do the same. For example, on May 25, 2022, I shared with my employees that Honeyfund is a donor to the Center for Humane Technology, which is dedicated to ensuring that technology companies try to do better for our citizens. On June 4, I wished everyone a "happy pride" and shared photos of my family with the float my church organized in a local parade.

14.     There are also specific prohibited concepts that I feel are important to train on and to discuss at Honeyfund. These include the concept that "[a]n individual, by virtue of his or her race, color, sex, or national origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously." Learning about issues like implicit bias is necessary in the workplace. Implicit bias exists and is scientifically demonstrable—therefore it is important to educate my employees about it so they can recognize it at work and take steps to overcome it. I do not know how I will address implicit bias with my employees without advancing this concept.

15.     I also find it particularly important to discuss how "[a]n individual's . . . status as either privileged or oppressed is necessarily determined by his or her race, color, sex, or national origin." I believe that certain people are privileged in American society for reasons including their gender or the color of their skin, given our history. It is essential that my employees understand privilege at a systems-level. White and male privilege as a function of access to and participation in economic institutions and systems are empirically demonstrable. I need my employees to learn about these concepts in order to address these past wrongs and advance non-men and people of color in the workplace.

16.     **Second**, I object to Florida's political leaders imposing their views on me and Honeyfund. It is undemocratic for the government to censor me and my business, and ban our views just because it disagrees with them. I value my right to run my business as I see best, and to share information with my employees without interference from the government. It scares me that I could face serious consequences just for speaking in a way that the government does not like. I do not feel I should have to stay away from certain subjects that are deeply important to me and to Honeyfund out of fear that someone may feel distressed by my views. Honeyfund is entitled to have company values and express itself just as much as any other company espousing views that the government supports.

17.     **Third**, the law's vagueness makes it nearly impossible for me to comply, or even to know if I am complying. I will need to hire lawyers and spend a lot of time

and money to try to figure out how to choose my words very carefully to avoid "advancing" the prohibited concepts so that I don't violate the law. Because this is such blatant government overreach to restrict speech, there is no precedent to follow. The law imposes major hurdles to my small business just trying to operate in Florida and honestly makes me second-guess my decision to move my company to the state.

18.  To me, the law seems intentionally vague so that companies will be scared away from providing DEI training and anti-harassment training altogether.

19.  In addition to the law being generally vague, there are a number of particular terms in it that I do not understand because they are so vague. I am confused how I can provide instruction on the prohibited topics in a way that is not "endorsement." It makes me scared that an employee could sue me just because they felt "distress" while learning about important issues. It feels impossible for me to discuss, without endorsing, for example, that white or male privilege exists and that we should all seek to overcome such structures of privilege.

20.  Another example of the law's vagueness: I am proud that Honeyfund is a woman-owned business, and I talk to my employees about the need to make efforts to ensure that women (and members of other historically oppressed groups) can flourish in the workplace. I have read a number of studies that empirically demonstrate that women-run businesses are more profitable. I even share my views with employees around the historical and current oppression of women and that we all have a responsibility to take action to correct it. I am uncertain about whether these conversations violate the Act's prohibited concept that "an individual . . . bears personal responsibility for and must feel guilt, anguish, or other forms of psychological distress because of actions, in which the individual played no part, committed in the past" by others with the same demographic characteristics, or the prohibited concept that "members of one race, color, sex, or national origin cannot and should not attempt to treat others without respect to race, color, sex, or national origin."

21.  As discussed above, I have shared all of these views at mandatory all-team meetings and in other settings. I aim to continue these types of conversations, although I am concerned that I may run afoul of the Stop WOKE Act by doing so.

22.  I realized during the Black Lives Matter protests in 2020 that as my company grows, it is important that we formalize DEI training so that we can attract and maintain top talent. We have been planning for Honeyfund to start

formalized DEI training this year at our November 2022 mandatory team retreat. We also plan to hold continuing trainings and discussions.

23.    Teamwide retreats require advance planning and we are considering hiring an outside DEI expert, so we need to know what the law is now. We are in the midst of working to develop the training. Planned topics include advancing women in business, understanding gender expansiveness, and understanding institutional racism. We will also conduct anti-harassment training. I am concerned that some of these topics overlap with the concepts prohibited by the Stop WOKE Act and that I will be censored from sharing information with my employees that I have determined is important to share.

24.    I aim to continue with plans for the training. But because of the Stop WOKE Act, I will have to hire lawyers to review everything and wordsmith the language. If the law is not enjoined, we will likely need to drastically change or limit the scope of some of our sessions, or make them optional instead of mandatory, to ensure that Honeyfund does not violate this new law. I will also constantly fear that I will be sued for any slight misstep, because the law is so vague that I cannot tell what it bans. I feel like I am being asked to do the impossible. It seems unconstitutional that my state is trying to ban my speech because its political leaders disagree with it.

I certify under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge. Executed in Sonoma County, California, this 29th day of June 2022.

_____
Sara Margulis