# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

|  |  |
|---|---|
| HONEYFUND.COM, INC., et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>RON DESANTIS, in his official capacity as Governor of Florida, et al.,<br><br>*Defendants*. | Case No. 4:22-cv-227-MW/MAF |

# DEFENDANTS' RESPONSE IN
# SUPPORT OF THEIR MOTION TO DISMISS

Timothy L. Newhall
*Special Counsel*
Complex Litigation
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone: (850) 414-3300
timothy.newhall@myfloridalegal.com

Charles J. Cooper (Bar No. 248070DC)
John D. Ohlendorf (*Pro Hac Vice*)
Megan M. Wold (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601

*Counsel for Defendants Ron DeSantis, in his official capacity, et al.*

August 4, 2022

## INTRODUCTION

In opposing Defendants' motion to dismiss, Plaintiffs describe Governor DeSantis's political advocacy in great detail, but they fall short of identifying the only thing that matters: a "provision of Florida law" that "provides the Governor with *any* enforcement authority when it comes to the challenged provisions" of the Act. Order Granting In Part and Denying In Part Motion to Dismiss at 2, *Falls v. DeSantis*, No. 4:22-cv-166-MW/MJF (N.D. Fla. July 8, 2022) ECF No. 68. That is because the Governor *has no* enforcement authority under the Individual Freedom Act (the "Act"), 2022 Fla. Laws 72, which instead assigns enforcement authority to the Commission, the Attorney General, and certain private citizens. FLA. STAT. § 760.021; FLA. STAT. § 760.11. Accordingly, the Governor is not a proper party under *Ex Parte Young*, 209 U.S. 123 (1908), Plaintiffs have no standing to bring this suit against him, and Defendants' motion to dismiss should be granted.

## ARGUMENT

### I.   Governor DeSantis Is Not a Proper Defendant and Must Be Dismissed.

To be a proper defendant under *Ex Parte Young* as well as under the traceability standards of Article III, the Governor must have "more than 'some connection' with the underlying claim." *Falls*, *supra*, citing *Namphy v. DeSantis*, 493 F. Supp. 3d 1130, 1137 (N.D. Fla. 2020). Plaintiffs "must show, at the very least, that the official has the authority to enforce the particular provision that he has

1

challenged, such that an injunction prohibiting enforcement would be effectual." *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021). Here, that standard is not satisfied because no provision of Florida law "imbues [the Governor] with the responsibility to enforce the law or laws at issue in the suit." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (citation omitted).

Plaintiffs scarcely even try to show otherwise. Instead, they spend the bulk of their brief describing, in page after page of examples, the forcefulness of the Governor's political rhetoric and his effectiveness at persuading the legislature to enact his policy preferences. All of the ink is wasted, because the Governor's public comments are utterly irrelevant to the legal question here. *Ex Parte Young* demands a showing of "authority to *enforce* the [challenged] provision," *Support Working Animals*, 8 F.4th at 1201 (emphasis added)—not public advocacy supporting the provision during a press conference. Yes, the Governor introduced the Act, managed its passage, signed it into law, and has described it as one of his signal achievements. Pls.' Opp. To Defs.' Mot. to Dismiss at v, ECF No. 52 (July 29, 2022) ("MTD. Opp."). But that is what successful elected officials do: propose legislative policies and work to see them enacted as law. Plaintiffs cite no case for the proposition that an official is a proper defendant because he *supported the enactment* of the law at issue, even if he has no authority to *enforce* it.

Nor are the Governor's policy positions in other, completely unrelated contexts relevant here. Plaintiffs include a lengthy "greatest hits" album of criticisms from the Governor's political opponents, decrying his policies on everything from the Walt Disney Company to the Tampa Bay Rays. But the Governor's speech criticizing professional sports subsidies and social media companies is not before this Court, and Plaintiffs' discussion of the Governor's public advocacy does nothing to establish that Florida law "imbues him with responsibility to enforce the law or laws at issue." *Grizzle*, 634 F.3d at 1319.

While Plaintiffs insist that they "fear that their businesses may be targeted next for punishment by the Governor using the levers of state power," MTD Opp. 11, they identify no concrete or specific basis for their speculation that they will purportedly be "targeted next" by the Governor. Their position is apparently that because of the Governor's past criticism of Disney and Facebook, he is now a proper defendant *whenever a company or individual who opposes his policies challenges any State law*. Political opposition to Governor DeSantis is not a license to erase the Eleventh Amendment from the Constitution.

In any event, most of the statements that Plaintiffs characterize as "threaten[ing] to use the levers of the state to punish businesses" are, ironically, simply examples of the Governor exercising his *own free speech rights*. Plaintiffs quote the Governor's statement that, "if you're going to criticize what we're doing

3

[in Florida] I may criticize some of the things you are doing. … I got cameras that will follow me around. Maybe I'll go talk about that a little bit." MTD Opp. at 6–7; *see also id.* at 5 (describing Governor's speech criticizing corporations that "make a lot of money from Chinese slave labor, but they don't want voter I.D. in the United States"). But these statements simply describe the Governor's own speech on political issues, and countering speech with more speech is exactly what the First Amendment protects. *See, e.g., United States v. Alvarez*, 567 U.S. 709, 728 (2012) (plurality) ("The First Amendment itself ensures the right to respond to speech we do not like.").

In the end, Plaintiffs' arguments for keeping the Governor in this case essentially depend not on any enforcement authority they allege him to have, but on his political views and past legislative successes. That is plainly insufficient to make the Governor a proper defendant under either *Ex Parte Young* or Article III.

In the small space Plaintiffs devote to claiming some actual enforcement role for the Governor, MTD Opp. at 15–17, Plaintiffs rely on the Governor's general executive authority to enforce state laws and oversee the executive branch. But it is hornbook law that this general power, standing alone, "is insufficient to make him the proper party whenever a plaintiff seeks to challenge the constitutionality of a law." *Harris v. Bush*, 106 F. Supp. 2d 1272, 1276–77 (N.D. Fla. 2000) (collecting cases); *see also Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir.

2003) ("A governor's 'general executive power' is not a basis for jurisdiction in most circumstances."). Plaintiffs also point to the Governor's general constitutional authority to "initiate judicial proceedings in the name of the state against any executive or administrative state … officer to enforce compliance with any duty." FLA. CONST. art. IV, sec. 1(b), *see* MTD Opp. at 15–16. But that authority—to go to court and seek a *judicial order* instructing some executive official to comply with the law—is the *exact opposite* of "the authority to enforce the particular provision" at issue. *Support Working Animals*, 8 F.4th at 1201. And again, if this constitutional power, which applies on its face to "any executive or administrative state . . . officer" and "any duty" under state law, FLA. CONST. art. IV, sec. 1(b), could create direct enforcement authority by the Governor, it would render the Governor a proper defendant in *every* challenge to state law, in direct defiance of binding precedent.

Plaintiffs also note the Governor's power to appoint the Commission's members or to suspend them for cause. MTD Opp. at 16. But as this Court has previously held, "the power to suspend *alone* can[not] establish that Plaintiffs' injuries are traceable to Governor DeSantis," absent some additional, specific enforcement authority over the challenged law. *Dream Defenders v. DeSantis*, 553 F. Supp. 3d 1052, 1080 (N.D. Fla. 2021). That is the missing piece of the puzzle that Plaintiffs are unable to find.

Plaintiffs next point to a statement on the Commission's *website* suggesting that it may refer employment complaints to the Governor's office. MTD Opp. at 16. But as Defendants have previously explained, Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss at 7–9, ECF. No. 50-1 (July 21, 2022), the Commission *does not have* such power, and even if it did, and even if the Governor's Citizen's Assistance Office could act on such a referral, that would not make the Governor a proper defendant in this case. Plaintiffs offer no response whatsoever to our briefing on this point.

Plaintiffs' motion to dismiss the Governor from this case should be granted.

## II.   Plaintiffs' Claims Should Also Be Dismissed Under Fed. R. Civ. P. 12(b)(6) for Failure To State a Claim.

As Defendants have previously argued and reiterate here, Plaintiffs' complaint should be dismissed because it fails to state a claim for the reasons set out in Defs.' Mem. in Opp. To Pls.' Mot. for Prelim. Inj., ECF. No. 49 (July 21, 2022).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to dismiss should be granted.

## Local Rule 7.1(F) Certification

The undersigned hereby certifies that Defs.' Resp. in Supp. of Their Mot. to Dismiss contains 1,434 words.

Dated: August 4, 2022

Respectfully Submitted,

Timothy L. Newhall
*Special Counsel*
Complex Litigation
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone: 850.414.3300
timothy.newhall@myfloridalegal.com

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 248070DC)
John D. Ohlendorf (*Pro Hac Vice*)
Megan M. Wold (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants Ron DeSantis,*
*in his official capacity, et al.*