# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

|  |  |
|---|---|
| **HONEYFUND.COM, INC.,** **PRIMO TAMPA, LLC,** **CHEVARA ORRIN**, and **WHITESPACE CONSULTING, LLC D/B/A COLLECTIVE CONCEPTS, LLC,** | Case No. 4:22-cv-227-MW-MAF |
| Plaintiffs, | **PLAINTIFFS' MOTION TO DETERMINE AMOUNTS OF ATTORNEY'S FEES AND COSTS AND INCORPORATED MEMORANDUM OF LAW** |
| v. |  |
| **RON DESANTIS**, *in his official capacity as Governor of Florida*, **ASHLEY MOODY**, *in her official capacity as Attorney General of Florida*, **DARRICK MCGHEE**, *in his official capacity as the Chair of the Florida Commission on Human Relations,* et al. |  |
| Defendants. |  |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...........................................2

ARGUMENT ........................................................................................5

    I.    Plaintiffs Seek Reasonable Hourly Rates for Its Attorneys. ......................8

        A.    The Relevant Legal Community is Tallahassee, Florida..............10

        B.    The Hourly Rates Sought Are Reasonable. ...................................10

    II.    Plaintiffs Seek Compensation for a Reasonable Number of Hours. ........23

    III.    Adjustments to the Lodestar ....................................................26

    IV.    Plaintiffs Seek Reasonable Costs and Expenses. ....................................29

CONCLUSION .....................................................................................33

# TABLE OF AUTHORITIES

## Cases

*ACLU of Ga. v. Barnes*, 168 F.3d 423 (11th Cir. 1999) ..........................................10

*Aleshire v. Waste Pro. of Fla., Inc.*, No. 1:22-cv-17, 2023 U.S. Dist. LEXIS 233644 (N.D. Fla. June 21, 2023) .............................................12, 18, 19

*Alper Auto., Inc. v. Day to Day Imports, Inc.*, No. 18-cv-81753, 2022 WL 3904327 (S.D. Fla. July 26, 2022) ............................................................8, 19

*Austin v. Univ. of Fla. Bd. of Trs.*, No. 1:21-cv-184, 2023 WL 7932477 (N.D. Fla. Nov. 9, 2023) .........................................................13, 26, 27

*Blanchard v. Bergeron*, 489 U.S. 87 (1989) .............................................................17

*Blum v. Stenson*, 465 U.S. 886 (1984) ..............................................................8, 22

*Dowdell v. City of Apopka*, 698 F.2d 1181 (11th Cir. 1983) ............................29, 30

*Evans v. Books-A-Million*, 762 F.3d 1288 (11th Cir. 2014) ....................................30

*George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281 (M.D. Fla. 2000) ...........................................................................................................31

*Gowen Oil Co. v. Abraham,* No. 210-cv-157, 2012 WL 1098568 (S.D. Ga. Mar. 30, 2012) ...................................................................................23

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................24

*Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531 (6th Cir. 2008) ....................23

*Jenkins v. Siraji, Inc.*, No. 2017 CA 2309 (Fla. Cir. Ct. Dec. 14, 2021) ................19

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ............12, 24

*Johnson v. Univ. Coll. of Univ. of Ala.*, 706 F.2d 1205 (11th Cir. 1983) ...........................................................................................................31

*Loranger v. Stierheim*, 10 F.3d 776 (11th Cir. 1994) .............................................26

*Maner v. Linkan LLC*, 602 F. App'x 489 (11th Cir. 2015) ..........................8, 12, 13

*Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274 (1989) ...........................................8

*Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) .........................................................................................8, 20, 23

*Perdue v. Kenny A.*, 559 U.S. 542 (2010).........................................................7, 8, 9

*Perkins v. Mobile Hous. Bd.*, 847 F.2d 735 (11th Cir. 1988) .................................24

*Prison Legal News v. Inch*, 411 F. Supp. 3d 1198 (N.D. Fla. 2019)...............*passim*

*Thompson v. Smith*, 805 Fed. App'x 893 (11th Cir. 2020).....................................30

*Woodward v. O'Malley*, No. 2:22-cv-639, 2024 WL 3642327 (M.D. Fla. July 1, 2024) ...............................................................................................18

**Statutes**

42 U.S.C. § 1983 .....................................................................................................17

42 U.S.C. § 1988..........................................................................1, 3, 7, 29, 30, 32

**Other Authorities**

*Agreement Between the State of Florida Department of Education, The Florida Board of Governors and Cooper & Kirk, PLLC*, Florida Accountability Contract Tracking System (FACTS) (June 28, 2023), https://facts.fldfs.com/Search/ ContractDetail.aspx?AgencyId=480000&ContractId=24019&Tab= 3 ...........................................................................................................................21

Andrew Atterbury, *Appeals Court Slams Florida's 'Stop-Woke' Law for Committing 'Greatest First Amendment Sin'*, Politico (Mar. 4, 2024), https://www.politico.com/news/2024/03/04/desantis-woke-law-court-00144801 ..............................................................................................6

Andrew Atterbury*, Federal Courts Spike Piece of DeSantis 'Stop Woke' Law, Politico* (July 26, 2024), https://www.politico.com/news/2024/07/26/federal-courts-florida-stop-woke-law-00171451 ......................................................................................6

Andrew Ross Sorkin, et al., *Florida's 'Stop WOKE' Act Gets Pushback in Court*, N.Y. Times (Aug. 19, 2022), https://www.nytimes.com/2022/08/19/business/dealbook/florida-desantis-stop-woke-act.html ...................................................................5

Anumita Kaur, *Appeals Court Blocks Fla. 'Stop Woke Act,' Says It's a 'First Amendment Sin'*, Washington Post (Mar. 4, 2024), https://www.washingtonpost.com/nation/2024/03/04/appeals-court-blocks-florida-stop-woke-act/.................................................................5

Kiara Alfonseca, *The Impact of Anti-DEI Legislation*, ABC News (Apr. 5, 2024), https://abcnews.go.com/US/map-impact-anti-dei-legislation/story?id=108795967 .............................................................6

Sydney Bishop, *Judge Permanently Blocks Part of Florida's 'Stop WOKE Act'*, CNN (July 29, 2024), https://www.cnn.com/2024/07/29/us/florida-ron-desantis-stop-woke-act-part-overturned...............................................................6

Landon Mion, *Judge Permanently Blocks Part of Florida's 'Stop WOKE Act' as Unconstitutional on First Amendment Grounds*, Fox News (July 27, 2024), https://www.foxnews.com/politics/judge-permanently-blocks-part-floridas-stop-woke-act-unconstitutional-first-amendment-grounds....................6

Michael Rosenwald, *A Day in Court for Jim Obergefell, the Face of the Historic Gay Marriage Case*, Washington Post (Apr. 28, 2015), https://www.washingtonpost.com/local/a-day-in-court-for-jim-obergefell-the-face-of-the-historic-gay-marriage-case/2015/04/28/99a00bdc-eda5-11e4-8666-a1d756d0218e_story.html .......................................................3

Nate Raymond, *Florida Loses Court Bid to Revive 'Woke' Workplace Training Ban*, Reuters (Mar. 4, 2024), https://www.reuters.com/legal/florida-loses-court-bid-revive-woke-workplace-training-ban-2024-03-04/....................................6

Richard Vanderford, *Diversity-Training Firms Applaud Blocking of Florida's 'Stop Woke Act'*, Wall St. J. (Aug. 19, 2022), https://www.wsj.com/articles/diversity-training-firms-applaud-blocking-of-floridas-stop-woke-act-11660947400..............................................5

Tim Craig, *Judge Blocks Florida's 'Stop Woke Act' Restrictions for Private Companies*, Washington Post (Aug. 18, 2022), https://www.washingtonpost.com/nation/2022/08/18/florida-stop-woke-act/ ................................................................................................................5

Plaintiffs, by and through their undersigned counsel and pursuant to Northern District of Florida Local Rule 54.1(E), hereby file this motion (the "Motion") to determine the amount of attorney's fees and costs to which they are entitled in relation to the district court and appellate proceedings in this matter.

After this Court granted Plaintiffs' motion for a preliminary injunction on nearly all grounds, the Eleventh Circuit affirmed that preliminary injunction, which effectively resolved the merits of the case, as Defendants have conceded.  *See* ECF No. 71.  The Eleventh Circuit then granted Plaintiffs' unopposed motion to transfer consideration of its appellate attorney's fees to this Court.  *See* ECF No. 74. Defendants did not oppose a motion by Plaintiffs to convert the preliminary injunction into a permanent injunction, which would have statewide effect.  *See* ECF No. 78 at 4-5 & n.1.  The Court subsequently declared that the Stop WOKE Act "violates free speech rights under the First and Fourteenth Amendments to the U.S. Constitution" and entered a "statewide permanent injunction" whereby Defendants were "hereby permanently enjoined from implementing, operating, or enforcing" the Act.  ECF No. 79.

Due to Plaintiffs' resounding victory, and lacking opposition from Defendants, the Court later determined that Plaintiffs are the "prevailing parties" in this action within the meaning of 42 U.S.C. 1988(b) and are therefore entitled to attorney's fees.  ECF No. 83.  Therefore, the only remaining issue, under the

bifurcated procedure in this District, is to the determine the proper amount of those fees under the applicable law.  *See* N.D. Fla. Loc. R. 54.1(E).

After careful review and painstaking exercise of billing judgment, Plaintiffs request 1,136.0 hours for their attorneys and other timekeepers from Ropes & Gray LLP ("Ropes & Gray" or "Ropes"), and 542.5 hours for their attorneys and other timekeepers from the Protect Democracy Project ("Protect Democracy"), in connection with litigating this case over the course of more than two years both in this Court and at the Eleventh Circuit (and back again to this Court).  Accordingly, Plaintiffs seek $458,676 in attorney's fees and $32,128 in costs/expenses for work conducted by Ropes & Gray on their behalf, and $290,966 in attorney's fees and $2,641 in costs/expenses for work conducted by Protect Democracy on their behalf. Plaintiffs additionally seek $6,375 for their fees expert, Richard E. Johnson. For reasons presented in this Motion, Plaintiffs respectfully request that this Court grant their Motion.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The relevant factual and procedural background was included in Plaintiffs' earlier Motion to Determine Entitlement to Attorney's Fees and Costs, *see* ECF No. 81 at 2-5, which motion was not opposed by Defendants, *see* ECF No. 82, and was subsequently granted in full by this Court, *see* ECF No. 83.   Plaintiffs hereby incorporate that same background in this Motion, with the only further procedural

development not included in that earlier motion being this Court's determination that Plaintiffs "are prevailing parties within the meaning of 42 U.S.C. § 1988(b)" and are therefore entitled to attorney's fees and costs.  *Id.*  The pertinent aspects of the factual and procedural background are also summarized above in the introductory section to the instant Motion.

Plaintiffs' counsel in this matter are Ropes & Gray LLP ("Ropes & Gray" or "Ropes") and the Protect Democracy Project ("Protect Democracy").   Ropes & Gray is a law firm with an abiding commitment to impactful pro bono work that it completes at no cost to its clients and with no expectation of any monetary return. *See* Declaration of Douglas Hallward-Driemeier ("Hallward-Dreimeier Decl.") ¶ 6. As one example, in 2015, the lead attorney from Ropes in this matter, Douglas Hallward-Driemeier, argued the landmark marriage equality case, *Obergefell v. Hodges*, before the U.S. Supreme Court with the support of a committed pro bono team from Ropes.  *See* Michael Rosenwald, *A Day in Court for Jim Obergefell, the Face of the Historic Gay Marriage Case*, Washington Post (Apr. 28, 2015), https://www.washingtonpost.com/local/a-day-in-court-for-jim-obergefell-the-face-of-the-historic-gay-marriage-case/2015/04/28/99a00bdc-eda5-11e4-8666-a1d756d0218e_story.html.  Ropes & Gray uses the fee awards it receives from its pro bono cases to fund its extensive and nationally recognized pro bono program, including its pro bono fellowships.  *See* Hallward-Driemeier Decl. ¶ 6.

Protect Democracy is a nonprofit organization whose mission is to prevent American democracy from declining into a more authoritarian form of government. *See* Declaration of Shalini Goel Agarwal ("Agarwal Decl.") ¶ 7.  Those efforts are geared toward, *inter alia*, combating authoritarian actions, which include: censoring ideas that challenge government officials' preferred narrative, muzzling independent institutions, and directing outrage toward disfavored groups.  *See id.*  (A co-founder and managing director of Protect Democracy, Justin Florence, was previously an attorney at Ropes, directly before he co-founded the organization.)  The lead attorney from Protect Democracy, Shalini Goel Agarwal, has had over 15 years of legal experience in the civil rights arena specifically, including work with the Washington Lawyers' Committee for Civil Rights and Urban Affairs, the American Civil Liberties Union of Florida, and the Southern Poverty Law Center, before joining Protect Democracy.  *See id.* ¶ 8.

Ropes & Gray and Protect Democracy litigated this case jointly, with Ropes & Gray largely focusing on free speech issues under the First Amendment (and rebutting Defendants' varied arguments), and with Protect Democracy largely focusing on vagueness issues under the Fourteenth Amendment (and similarly rebutting a plethora of arguments advanced by Defendants), as both relate to the unconstitutional Stop WOKE Act.  The ability to speak freely in a workplace training—which had been unconstitutionally chilled by the Stop WOKE Act—is

only available now in Florida because of the sustained efforts of Plaintiffs and their counsel.

## **ARGUMENT**

As this Court has already determined that Plaintiffs are entitled to reasonable attorney's fees, the only issue that remains is the amount of fees to be awarded.  *See* ECF No. 83.  Plaintiffs' requested hourly rates for their counsel and the total amount of hours billed by their counsel, in relation to the district court and appellate proceedings, are reasonable in light of the nature of this case and the applicable case law.

This case was one of national significance and received widespread media coverage from top news outlets.  Extensive coverage occurred after the district court's grant of a preliminary injunction,[1] as well as after the Eleventh Circuit's affirmance of the same.[2]  Even the conversion of the preliminary injunction into a

---

[1] *See, e.g.*, Tim Craig, *Judge Blocks Florida's 'Stop Woke Act' Restrictions for Private Companies*, Washington Post (Aug. 18, 2022), https://www.washingtonpost.com/nation/2022/08/18/florida-stop-woke-act/;   Richard Vanderford, *Diversity-Training Firms Applaud Blocking of Florida's 'Stop Woke Act'*, Wall St. J. (Aug. 19, 2022), https://www.wsj.com/articles/diversity-training-firms-applaud-blocking-of-floridas-stop-woke-act-11660947400;   Andrew   Ross Sorkin, et al., *Florida's 'Stop WOKE' Act Gets Pushback in Court*, N.Y. Times (Aug. 19, 2022), https://www.nytimes.com/2022/08/19/business/dealbook/florida-desantis-stop-woke-act.html.

[2] *See, e.g.*, Anumita Kaur, *Appeals Court Blocks Fla. 'Stop Woke Act,' Says It's a 'First Amendment Sin'*, Washington Post (Mar. 4, 2024), https://www.washingtonpost.com/nation/2024/03/04/appeals-court-blocks-florida-stop-woke-

statewide permanent injunction garnered numerous headlines.[3]  The significance of

this case should be contextualized within the broader trend of various states'

attempts to implement "anti-DEI" legislation, many of which were looking to this

case as one of first impression.[4]  This case was not only significant, but resulted in

a significant outcome: the rejection of the Stop WOKE Act as unconstitutional and

the entering of a *statewide* permanent injunction preventing enforcement of the Act.

Plaintiffs' efforts, which were consistently geared toward simplifying the issues and

streamlining the case for this Court and the Eleventh Circuit, were in response to

---

act/; Nate Raymond, *Florida Loses Court Bid to Revive 'Woke' Workplace Training Ban*, Reuters (Mar. 4, 2024), https://www.reuters.com/legal/florida-loses-court-bid-revive-woke-workplace-training-ban-2024-03-04/; Andrew Atterbury, *Appeals Court Slams Florida's 'Stop-Woke' Law for Committing 'Greatest First Amendment Sin'*, Politico (Mar. 4, 2024), https://www.politico.com/news/2024/03/04/desantis-woke-law-court-00144801.

[3] Andrew Atterbury, *Federal Courts Spike Piece of DeSantis 'Stop Woke' Law*, Politico (July 26, 2024), https://www.politico.com/news/2024/07/26/federal-courts-florida-stop-woke-law-00171451; Landon Mion, *Judge Permanently Blocks Part of Florida's 'Stop WOKE Act' as Unconstitutional on First Amendment Grounds*, Fox News (July 27, 2024), https://www.foxnews.com/politics/judge-permanently-blocks-part-floridas-stop-woke-act-unconstitutional-first-amendment-grounds; Sydney Bishop, *Judge Permanently Blocks Part of Florida's 'Stop WOKE Act'*, CNN (July 29, 2024), https://www.cnn.com/2024/07/29/us/florida-ron-desantis-stop-woke-act-part-overturned.

[4] *See* Kiara Alfonseca, *The Impact of Anti-DEI Legislation*, ABC News (Apr. 5, 2024), https://abcnews.go.com/US/map-impact-anti-dei-legislation/story?id=108795967 (noting that [a]cross the country . . . legislators have begun to target diversity programs in state agencies, schools, and private  companies" and that "[a]t least 10 states have implemented restrictions on . . . DEI: Alabama, Florida, Idaho, Indiana, North Carolina, North Dakota, Tennessee, Texas, Utah and Wyoming").

Defendants' own approach, which asserted numerous arguments against Plaintiffs' claims, such as the speech-conduct distinction, "captive audience" doctrine, and supposed analogies between the Stop WOKE Act and Title VII of the Civil Rights Act of 1964.   Plaintiffs and their counsel prosecuted this case diligently and expended considerable effort in researching, briefing, and arguing their own issues and rebutting those that Defendants raised, both at the district court and on appeal (and back again to the district court).   The fact that Defendants represented that they might oppose the entitlement motion resulted in further hours being expended on research and briefing on that motion, which Defendants ultimately decided not to oppose after seeing the opening motion.   This Court found that Plaintiffs were entitled to attorney's fees and costs, and, while Plaintiffs' requested award is not insignificant, it is in line with the applicable case law and the effort reasonably expended to obtain a substantial victory on the part of their clients.

The appropriate methodology for this action is the "lodestar" method, which has been endorsed by the Supreme Court as meeting the reasonableness standard set forth in civil rights fee-shifting statutes such as 42 U.S.C. § 1988.   *See Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010) (noting that "there is a 'strong presumption' that the lodestar figure is reasonable" and that enhancements may even be made above the lodestar figure in certain circumstances).   The Eleventh Circuit and the Northern District of Florida have similarly adopted the lodestar method in determining

reasonable attorney's fees.  *See Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Prison Legal News v. Inch*, 411 F. Supp. 3d 1198 (N.D. Fla. 2019) (Walker, C.J.).

To determine the "lodestar," the court calculates the hours reasonably expended by counsel multiplied by the prevailing market rates."  *Perdue*, 559 U.S. at 552; *Norman*, 836 F.2d at 1299.  The resulting lodestar is "presumed to be the reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 897 (1984).  In addition to hours worked by attorneys, the lodestar includes hours worked by paralegals. *See Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 285-89 (1989).  The same is true of summer associates. *See Alper Auto., Inc. v. Day to Day Imports, Inc.*, No. 18-cv-81753, 2022 WL 3904327, at *4 (S.D. Fla. July 26, 2022).  Based on the "lodestar" method, which is presumptively reasonable, Plaintiffs respectfully request that this Court grant this Motion.

## I.     Plaintiffs Seek Reasonable Hourly Rates for Its Attorneys.

A "reasonable hourly rate" is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Maner v. Linkan LLC*, 602 F. App'x 489, 493 (11th Cir. 2015) (quoting *Norman*, 836 F.2d at 1299).  Plaintiffs do not seek any enhancements above the lodestar, even though there is arguably a basis to do so.  For example, the Supreme Court has noted that "an enhancement may be appropriate

where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value." *Perdue*, 559 U.S. at 554-55.  Given the nature of the legal market and the relative uniformity in rates among top-tier law firms, counsel from Ropes & Gray are acutely aware of the market value of their hours.  Those market rates are *substantially higher* than the rates requested in this Motion.[5]  And Plaintiffs believe that the contributions from Protect Democracy were equally as valuable to them as those from Ropes & Gray. Nonetheless, Plaintiffs proceed without requesting enhancements because for the purposes of this Motion, and respecting this Court's and the parties' judicial resources, the lodestar method carries with it a "strong presumption" of "reasonable[ness]," and Plaintiffs are therefore willing to reduce their attorneys' market rates significantly.  *Id.* at 554.

---

[5] Specifically, Douglas Hallward-Driemeier's standard rate is $1,900 per hour, but this Motion requests $775 per hour.  *See* Hallward-Driemeier Decl. ¶ 13.  Amy Jane Longo's standard rate is $1,820 per hour, but this Motion requests $750 per hour. *See id.*  Phillip Yao's standard rate is $1,340 per hour, but this Motion requests $400 per hour.  *See id.*  Nathalia Sosa's standard rate is $1,340 per hour, but this Motion requests $400 per hour.  *See id.*  Jason Claman's standard rate is $830 per hour, but this Motion requests $200 per hour.  *See id.*  Mark Callahan's standard rate as a senior paralegal is $620 per hour, but this Motion requests $150 per hour.  *See id.* The standard rate for summer associates at Ropes & Gray is $585 per hour, but this Motion requests $150 per hour.  *See id.*

### A.     The Relevant Legal Community is Tallahassee, Florida.

Generally, the "'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)).   Regarding the district court proceedings, this case was filed and litigated in Tallahassee, Florida, whereas the appeal at the Eleventh Circuit was litigated in Atlanta, Georgia.   Plaintiffs focus on the Tallahassee market in line with the case law and in an effort to avoid unnecessary litigation.   Thus, Tallahassee is the appropriate legal market here for the purposes of determining reasonable attorney's fees.

### B.     The Hourly Rates Sought Are Reasonable.

Plaintiffs seek compensation for time reasonably spent litigating this action for over two years, prevailing at each stage of the litigation on all substantive issues, at reasonable hourly rates.   A breakdown of the rates for each timekeeper from both Ropes & Gray and Protect Democracy are listed below, along with their years of experience, in Table 1:

**Table 1: Proposed Attorney Rates**

| Name | Firm/Organization | Years of Attorney Experience | Hourly Rate |
|---|---|---|---|
| Douglas Hallward-Driemeier | Ropes & Gray | 30 | $775 |
| Amy Jane Longo | Ropes & Gray | 28 | $750 |
| Shalini Goel Agarwal | Protect Democracy | 18 | $650 |
| Rachel Goodman | Protect Democracy | 14 | $600 |
| John Langford | Protect Democracy | 10 | $550 |
| Sara Chimene-Weiss | Protect Democracy | 10 | $550 |
| Phillip Yao | Ropes & Gray | 5 | $400 |
| Nathalia Sosa | Ropes & Gray | 5 | $400 |
| Jason Claman | Ropes & Gray | 1 | $200 |
| Summer Associates | Ropes & Gray | N/A | $150 |
| Paralegals | Ropes & Gray / Protect Democracy | N/A | $150 |

Plaintiffs have further attached the declaration of Richard E. Johnson, the principal of an eponymous Tallahassee law firm. Johnson has over 30 years of experience as a civil rights litigator and has served as a fees expert in many prior cases, including civil rights matters here in the Northern District of Florida. *See Declaration of Richard E. Johnson ("Johnson Decl.")* ¶¶ 3, 6, 10. He is familiar with attorney rates in the Tallahassee market and has the expertise to opine on the reasonableness of the fees requested in this matter. *See id.* ¶ 10. In Johnson's opinion, the requested rates for Ropes & Gray's and Protect Democracy's attorneys and staff are reasonable and justified. *See id.* ¶¶ 39-42.

Courts in the Eleventh Circuit may also "rely on [their] own expertise" in establishing a reasonable hourly rate. *Maner*, 602 F. App'x at 493; courts may also consider certain case-specific factors where appropriate, sometimes referred to as the *Johnson* factors.[6]  This Motion particularly highlights some key factors relevant here: the experience, reputation, and ability of the attorneys; the time and labor required; the novelty of the questions; the skill required; the results obtained; and the awards in similar cases of the same magnitude and import.[7]

---

[6] As noted by the Eleventh Circuit in *Maner*, "These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Maner*, 602 F. App'x at 492 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

[7] Plaintiffs separately note: that as a pro bono case, the fees are essentially "contingent" in this matter and dependent on this Court's award of attorney's fees in relation to this Motion; that because the case involved substantial hours over the course of more than two years, the attorneys were "precluded" from taking on additional matters, including billable matters for the attorneys from Ropes & Gray; that the case was "undesirable" under the case law in part because of "a risk of non-collection," *Aleshire v. Waste Pro. of Fla., Inc.*, No. 1:22-cv-17-MW-MAF, 2023 U.S. Dist. LEXIS 233644, at *15 n.7 (N.D. Fla. June 21, 2023) (Walker, C.J.), *see also* Johnson Decl. ¶¶ 36-38, as well as due to Governor DeSantis's well-documented tendency to attack/retaliate against those who have spoken out on his legislative initiatives, *see* ECF No. 18 at 2 n.1 (collecting various news sources regarding same).

Regarding Plaintiffs' attorneys, the Court should "take[] into consideration . . . [their] excellent reputation and abilities in determining a reasonable fee for their legal services." *Prison Legal News*, 411 F. Supp. 3d at 1207-08 (citing *Maner*, 602 F. App'x at 492); *see also Austin v. Univ. of Fla. Bd. of Trs.*, No. 1:21-cv-184-MW-HTC, 2023 WL 7932477, at *3 (N.D. Fla. Nov. 9, 2023) (Walker, C.J.). Plaintiffs were represented by Ropes & Gray, a preeminent law firm, and Protect Democracy, a similarly preeminent civil rights advocacy organization.

The attorneys and staff on this case have significant relevant experience, and the counsel of record particularly stand out. Douglas Hallward-Driemeier leads Ropes & Gray's Appellate and Supreme Court practice and has 30 years of experience as a litigator. *See* Hallward-Driemeier Decl. ¶ 7. Hallward-Driemeier joined Ropes & Gray after over a decade of leading civil appeals and Supreme Court litigation on behalf of the United States while at the U.S. Department of Justice, including serving as an Assistant to the Solicitor General. *See id*. Hallward-Driemeier has argued 19 cases before the U.S. Supreme Court and over 100 appellate arguments in total, including before every U.S. Court of Appeals. *See id*. He has extensive experience with First Amendment litigation, including another suit against Florida that established critical precedent in *Wollschlaeger v. Governor of Florida*, 848 F.3d 1293 (11th Cir. 2017), which was relied on heavily by the district court and appellate decisions in this matter. *See* Hallward-Driemeier Decl. ¶ 7. Hallward-

Driemeier had also successfully challenged an Executive Order with similar effect to the Stop WOKE Act at the conclusion of the Trump administration.  *See id.; Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F. Supp. 3d 521 (N.D. Cal. 2020). As noted above, Hallward-Driemeier also successfully argued the landmark marriage equality case *Obergefell v. Hodges* before the U.S. Supreme Court.

Amy Longo has more than 25 years of experience as a litigator, including extensive first-chair trial experience as a defense counsel and senior Securities and Exchange Commission trial and supervisory trial attorney.  *See* Hallward-Driemeier Decl. ¶ 8.  She has been recognized as one of the top female lawyers in California and serves as Board Member for the Constitutional Rights Foundation.  *See id.* Longo also serves as the Executive Editor of Litigation, a publication of the American Bar Association's Section of Litigation.  *See id.*[8]

---

[8] Likewise, Phillip Yao, who expended considerable effort in briefing the First Amendment issues at both the district court and at the Eleventh Circuit, as well as the present fees briefing, has first-chaired numerous jury and bench trials as a Special Assistant District Attorney representing the Commonwealth of Massachusetts.  *See* Hallward-Driemeier Decl. ¶ 9.  Yao previously clerked for Chief Judge Jeffrey R. Howard of the U.S. Court of Appeals for the First Circuit, and like Hallward-Driemeier, was previously awarded a Rhodes Scholarship in recognition of intellectual and moral leadership.  *See id.* Yao further conducted extensive research on diversity in the legal profession in coordination with California Supreme Court Justice Goodwin Liu.  *See id.* Yao has worked on a number of litigations involving complex constitutional questions, including with Hallward-Driemeier.  *See id.* Nathalia Sosa, who similarly devoted substantial time to this case, has targeted expertise working on novel First Amendment issues, including in this context.  *See id.* ¶ 10.  She was part of the attorney team, led also by Hallward-Driemeier, that

Shalini Goel Agarwal has over 15 years of experience as a civil rights litigator at some of the most prominent legal organizations in the United States after beginning her legal career clerking for Judge David S. Tatel of the U.S. Court of Appeals for the D.C. Circuit. *See* Agarwal Decl. ¶ 8. Those organizations have included the Washington Lawyers' Committee for Civil Rights and Urban Affairs, the American Civil Liberties Union of Florida, and the Southern Poverty Law Center, before Agarwal joined Protect Democracy. *See id.* Agarwal has dedicated the overwhelming majority of her career to civil rights litigation in the public interest sector. *See id.*[9]

---

successfully challenged the Trump administration's 2020 executive order prohibiting federal contractors and grantees from conducting workplace diversity trainings. *See id.*; *Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F. Supp. 3d 521 (N.D. Cal. 2020).

[9] Similarly, Rachel Goodman is a highly experienced civil rights litigator, with over a decade of experience at Protect Democracy and the ACLU. *See* Agarwal Decl. ¶ 9. She is currently the Team Manager of Protect Democracy's Safeguarding the Public Square team, which focuses on norms and accountability, increasing access and participation, and rebuilding trust in the public square. *See id.* Among other high-profile cases, she has played a leading role in recent defamation cases of election workers. *See id.* She previously clerked for Judge Joseph A. Greenway III of the U.S. Court of Appeals for the Third Circuit. *See id.* John Langford has 10 years of experience in First Amendment civil rights litigation at leading civil rights organizations, including recent cases relating to the 2020 election. *See id.* ¶ 11. He served for 3 years as a staff attorney at the Media Freedom & Information Access Clinic, before coming to Protect Democracy as counsel. *See id.* Like Goodman, Langford also litigated recent defamation cases of election workers. *See id.* He previously clerked for Judge Robin S. Rosenbaum of the U.S. Court of Appeals for the Eleventh Circuit. *See id.* Sara Chimene-Weiss also has 10 years of experience which includes her work at Northeast Legal Aid, the ACLU, and the Capital Habeas

Moreover, given the novelty and complexity of the issues in this case, Plaintiffs acted reasonably by retaining counsel from outside the Tallahassee area who had targeted expertise in constitutional litigation, specifically First Amendment jurisprudence, and who were willing to take on a case of first impression involving an unusually crafted "anti-discrimination" statute. *See* Johnson Decl. ¶¶ 28, 38. The novelty and complexity of the issues is discussed in greater detail in Section II *infra* in relation to the reasonable number of hours and amount of effort expended on the case. Given the various arguments that Defendants raised in opposition to Plaintiffs' motion for preliminary injunction, great skill and thoughtfulness—born of extensive First Amendment experience—was needed to address those arguments, which included, for example, an unusual argument that the "anti-discriminatory" Stop WOKE Act could be analogized to Title VII protections.

Additionally, Plaintiffs obtained in full the relief they sought: a permanent injunction preventing enforcement of the Stop WOKE Act, and even further, achieved such injunction with *statewide* effect, following careful negotiation with Defendants. *See* ECF No. 78 at 4-5 & n.1; ECF No. 79. It is hard to envision greater

---

Unit of the Office of the Federal Public Defender for the District of Arizona, before she joined as counsel at Protect Democracy. *See id.* ¶ 10. Like Goodman and Langford, Chimene-Weiss also litigated recent defamation cases of election workers. *See id.* She previously clerked for the late Judge A. Richard Caputo of the U.S. District Court for the Middle District of Pennsylvania. *See id.*

success than what Plaintiffs attained in this case.  This Court's opinion, and the Eleventh Circuit's opinion affirming the same, now stand as important constitutional markers for courts across the United States.  Plaintiffs, in turn, have been able to continue their diversity trainings both as employers and trainers without fear of government encroachment on their free speech, which is exactly what they had wanted.

Despite their considerable expertise, expended effort, and resulting success, Plaintiffs' counsel have voluntarily reduced their current hourly rates for their lawyers and other timekeepers to the prevailing market rates applicable to counsel in the Northern District of Florida of reasonably comparable skills, experience, and reputation.  As such, Plaintiffs' counsel seek fees at the hourly rates laid out in Table 1 above. Though counsel are representing Plaintiffs pro bono in this matter, this "does not preclude the award of a reasonable fee to a prevailing party in a § 1983 action." *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989).

The requested rates accord with the case law from this District.  In particular, this Court in *Prison Legal News v. Inch*, also a civil rights case based on violations of the First and Fourteenth Amendments and brought under 42 U.S.C. § 1983, awarded rates of ***$900, $825, and $700 per hour*** to the lead attorneys for Plaintiffs. *See* 411 F. Supp. 3d at 1207.  While those were "Miami" rates, this Court noted that it was "aware of numerous attorneys in ***Tallahassee*** . . . charging hourly rates

comparable to those sought by Plaintiff's attorneys." *Id.* at 1208 n.5 (emphasis added), an explicit acknowledgment that even if "Tallahassee" rates were applicable (the relevant market being disputed in that case), the rates awarded would not have been unreasonable; *see also* Johnson Decl. ¶ 26.

The *Prison Legal News* case is already five years old, further justifying Plaintiffs' requested rates in this Motion, in part due to the effects of inflation in the time since (which the legal market has even outpaced).  *See id.* ¶ 29; *Aleshire v. Waste Pro. of Fla., Inc.*, No. 1:22-cv-17-MW-MAF, 2023 U.S. Dist. LEXIS 233644, at *12 (N.D. Fla. June 21, 2023) (noting that a case's age has the effect of "reducing its relevance to today's prevailing rates"); *see also, e.g.*, *Woodward v. O'Malley*, No. 2:22-cv-639-JRK, 2024 WL 3642327, at *1 (M.D. Fla. July 1, 2024) (recently "examin[ing] the Consumer Price Index" and "conclud[ing] [that] an increase in inflation does justify a proportionate increase in attorneys' fees such that the hourly rate requested is reasonable").  Moreover, Plaintiffs here request a top rate that is ***lower*** than the two top rates in *Prison Legal News.*  The top rate requested in this Motion is $775 per hour for a highly credentialed attorney, Douglas Hallward-Driemeier, whereas the top rate from the *Prison Legal News* decision was markedly higher at $900 per hour (as was the second highest rate in that case, at $825 per hour).

Other federal cases that have addressed Tallahassee rates have found Plaintiffs' proposed rates to be reasonable under the "lodestar" method. For example, this Court, in *Plummer v. Waste Pro of Fla., Inc.*, determined that rates of $600 per hour for an attorney with 17 years of experience (similar to Shalini Goel Agarwal's requested rate and experience), $300 per hour for an attorney with 5 years of experience (even though that attorney did "not claim any experience with FLSA cases," unlike the fifth-year associates in this matter who have direct experience with constitutional cases of national import), and $125 for a senior paralegal, were all "reasonable." No. 5:22-cv-28-MW-MJF, 2022 WL 19403193, at *3, *7 (N.D. Fla. Dec. 9, 2022) (Walker, C.J.)[10]; *see also Alper Auto.*, 2022 WL 3904327, at *4 (finding $150 to be a reasonable hourly rate for a summer associate). As relevant to first named Plaintiff—Honeyfund.com., Inc.—a state court in Leon County (Tallahassee being its county seat) noted that "litigators for corporations, including here in Tallahassee, charge $1,000 an hour or more," *Jenkins v. Siraji, Inc.*, No. 2017 CA 2309 (Fla. Cir. Ct. Dec. 14, 2021) (noting that "Florida follows the federal

---

[10] *Plummer* was an FLSA case from the Panama City Division of the Northern District, but this Court noted that the Tallahassee rates would only be "slightly different" from the Panama City rates (and in any event, that "cases from the Northern District of Florida generally are still helpful in determining a reasonable hourly rate"). *Plummer*, 2022 WL 19403193, at *6 n.5; *see also Aleshire*, 2023 U.S. Dist. LEXIS 233644, at *13 n.2 (noting, albeit in the FLSA context, that "the hourly rates in all three divisions [Tallahassee, Panama City, and Gainesville] . . . are similar").

lodestar approach to calculate reasonable attorneys' fees).  Plaintiffs' proposed rates are therefore reasonable under both federal and state cases that apply the federal lodestar method.  *See also* Johnson Decl. ¶¶ 29-35 (collecting cases).

Plaintiffs seek *current* rates for the various timekeepers that worked on their behalf, in line with the "Eleventh Circuit's directive that 'the court should take into account the time value of money and the effect of inflation and generally award compensation at current rates rather than historic rates.'"  *Prison Legal News*, 411 F. Supp 3d at 1208 n.6 (quoting *Norman*, 836 F.2d at 1302).

If Defendants oppose this Motion, Defendants should look to their own actions in hiring a premier law firm, Cooper & Kirk PPLC ("Cooper & Kirk"), to litigate the vast majority of the district court and appellate proceedings.  Charles Cooper from that firm was the primary signatory on every court filing and brief, his firm argued both oral arguments, and Plaintiffs' counsel negotiated with attorneys from his firm throughout the litigation, until the Florida Attorney General's Office took over for the fees portion of the litigation (at which point, attorneys from that office began signing the filings and briefing as well as negotiating with Plaintiffs' counsel).  As evident from the publicly available records in Florida, the State of Florida paid Cooper & Kirk's attorneys at a blended rate of ***$725 per hour*** for each attorney who worked on this case, regardless of legal experience.  The below chart

is reproduced directly from a public filing by the State of Florida in regard to Cooper

& Kirk's rates for various litigation relating to the Stop WOKE Act:

EXHIBIT 1 - Fee Schedule
**J. HOURLY BILLING SCHEDULE:**
A. CONTRACTOR's attorney and paralegal staff to be used under this contract include the following
individuals at the hourly rates indicated:

| NAME | Hourly Rate |
|---|---|
| Charles J. Cooper | $725 |
| John Ohlendorf | $725 |
| John Ramer | $725 |
| Davis Cooper | $725 |
| Megan Wold | $725 |
| Kaitlyn Troilo, Erica Lizza, and Annitta Bailey (Non-Attorneys) | $250 |
| ALL ATTORNEY WORK RELATED TO DISCOVERY | $350 |

*Agreement Between the State of Florida Department of Education, The Florida*

*Board of Governors and Cooper & Kirk, PLLC*, Florida Accountability Contract

Tracking System (FACTS) (June 28, 2023), https://facts.fldfs.com/Search/

ContractDetail.aspx?AgencyId=480000&ContractId=24019&Tab=3.  Here, unlike

the flat rate structure used by Cooper & Kirk for its five attorneys, Plaintiffs' counsel

requests rates in the $700-range only for its two most senior attorneys, and

appropriately uses downward gradations in rates for the other attorneys based on

years of experience.  While the average rate of Cooper & Kirk's attorneys was a flat

$725 per hour, [11] the average requested rate of Plaintiffs' attorney timekeepers comes

out to roughly $540 per hour.  Defendants therefore can hardly turn around now and

---

[11] In regard to Cooper & Kirk's reduced rate for discovery-related work, this matter
did not enter discovery.

argue that the highest rates requested by Plaintiffs are somehow unreasonable in this context, when Defendants themselves hired premier counsel at essentially that same rate for the same litigation (and indeed, if gradations had been used rather than a flat rate, Charles Cooper's rate would have been even higher relative to the more junior attorneys on his team).  What's more, Defendants paid their counsel from Cooper & Kirk at an average rate that was nearly ***40% higher*** than the average rate of Plaintiffs' counsel.[12]

Because the fee award in this case is "governed by the same standards which prevail in other types of equally complex Federal litigation," *Blum*, 465 U.S. at 893, Plaintiffs' counsel from Ropes & Gray could have sought fees closer to the hourly rates it charges its paying clients.  However, in line with the applicable case law, counsel for Ropes & Gray has endeavored to request fees at rates appropriate to the Northern District of Florida given their experience/expertise, rather than closer to their true market rates as dictated by the national market.  The requested rates are reasonable, as Plaintiffs' fees expert attests to in his declaration, *see* Johnson Decl. ¶¶ 39-42, and the Court should therefore grant Plaintiffs' Motion.

---

[12] Moreover, Defendants paid Cooper & Kirk's non-attorney timekeepers at a rate of $250 per hour, whereas Plaintiffs request $150 per hour for non-attorney timekeepers.  Defendants therefore paid non-attorney timekeepers from Cooper & Kirk at an average rate that was roughly ***67% higher*** than average rate of Plaintiffs' non-attorney timekeepers.

## II.  Plaintiffs Seek Compensation for a Reasonable Number of Hours.

Plaintiffs seek compensation for time reasonably spent litigating this action for over two years, prevailing at each stage of the litigation, at reasonable hourly rates.  "[T]he measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." *Norman*, 836 F.2d at 1306.  All requested hours are based on contemporaneous time records and are supported by declarations and exhibits documenting the tasks performed by counsel and the time devoted to each task. *See* Hallward-Driemeier Decl. ¶ 18; Agarwal Decl. ¶ 17.  This Motion is also supported by the declaration of a fees expert who attests to the reasonableness of the expended hours following careful review of the timesheets. *See* Johnson Decl. ¶¶ 15-17.  Moreover, those submitted records are "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552-53 (6th Cir. 2008) (citation omitted); *Gowen Oil Co. v. Abraham,* No. 210-cv-157, 2012 WL 1098568, at *3 (S.D. Ga. Mar. 30, 2012) (finding that where plaintiffs' counsel "provided detailed itemized bills documenting every action performed on behalf of its attorneys," team biographies, and accompanying declarations of attorneys and a fees expert, they "provided ample and specific evidence demonstrating the actual fees it incurred").

"Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Rather, counsel need only "identify the general subject matter of his time expenditures." *Id.* Moreover, in considering whether the amount of time was reasonable, counsel's declaration "that, in fact, it took the time claimed is evidence of considerable weight." *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988); *see* Hallward-Dreimeier Decl. ¶ 18; Agarwal Decl. ¶ 17.

Additionally, the novel and previously undecided issues pursued by Plaintiffs' attorneys in this litigation further demonstrate the reasonableness of the hours expended because "[c]ases of first impression generally require more time and effort on the attorney's part." *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). This case required thorough analysis, briefing, and argument regarding First Amendment freedom of speech issues, as well as Fourteenth Amendment vagueness concerns. Defendants raised a slew of issues and doctrines in the briefing at the district court and on appeal, including but not limited to: (i) the speech-conduct distinction and various related analogies to recent Eleventh Circuit case law; (ii) whether viewpoint discrimination is per se unconstitutional in the Eleventh Circuit; (iii) the unexpected invocation of the "captive audience" doctrine (in different ways at the district court and on appeal); (iv) a granular approach to the vagueness issues that required Plaintiffs to respond to Defendants' argument

-24-

regarding each and every word or phrase upon which the Act hinged; and (v) analogies between the Stop WOKE Act's protections and those provided under Title VII of the Civil Rights Act of 1964.  Also unusual was Defendants' framing of the Stop WOKE Act as an "anti-discrimination" statute, as an apparent attempt to color its review by the judicial branch.[13]

Here, Plaintiffs' counsel cumulatively request 1,678.5 hours, which include, *inter alia*: researching and drafting the complaint; researching, briefing, and arguing the preliminary injunction motion (opening and reply); researching, briefing, and arguing the motion to dismiss (opposition); researching, briefing, and arguing the appeal before the Eleventh Circuit (appellee brief); and researching and briefing the various motions relating to attorney's fees, including this present Motion.  Plaintiffs' counsel has provided contemporaneous, detailed time records setting forth the date of each entry, the timekeeper, the timekeeper's role, an appropriate description of the legal services rendered, and the time spent on the same.  *See* Hallward-Driemeier Decl., Ex. A; Agarwal Decl., Ex. A.  As discussed further below, Plaintiffs seek an award for a much smaller number of hours, reflecting an exercise in "billing

---

[13] Additionally, as noted earlier, the fact that Defendants represented that they might oppose the entitlement motion resulted in further hours being expended on research for and briefing of that motion, when ultimately Defendants—after seeing the opening motion—decided not to oppose it.

judgment" that was perhaps overly cautious, again in hopes of avoiding unnecessary litigation regarding fees.[14]

## III.   Adjustments to the Lodestar

Once the lodestar is calculated, necessary adjustments can be applied at the discretion of the court.  "[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve . . . If the lodestar is reasonable, a downward adjustment is merited only if the prevailing party was partially successful in its efforts."  *Austin*, 2023 WL 7932477, at *11 (internal quotation marks omitted).  As the prevailing parties were fully successful in this context, adjustments are not merited here.[15]

---

[14] The Court is not obligated to exercise billing judgment where the fee applicant has already done so, *see Prison Legal News*, 411 F. Supp. 3d. at 1208 (citing *ACLU of Ga.*, 168 F.3d at 428), nor is the Court required to "engage in a precise hour-by-hour review" where the "fee documentation is voluminous," *id.* (cleaned up) (quoting *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001)); *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)) (finding roughly 570 billed hours to be sufficiently voluminous such that an hour-by-hour analysis by the court was not required).

[15] The fact that the preliminary injunction was not granted as to Governor DeSantis is irrelevant here, as this Court determined that (1) the Stop WOKE Act did not give enforcement authority to the Governor and (2) remedies against other Defendants would make an injunction against the Governor redundant in any event.  *See* ECF No. 55 at 13-15.  An injunction against Governor DeSantis was therefore legally unnecessary and irrelevant for redressing Plaintiffs' injuries.  As noted earlier, Plaintiffs obtained in full the relief they sought: a permanent injunction preventing enforcement of the Stop WOKE Act, and even further, achieved such injunction such that it had *statewide* effect following careful negotiation with Defendants.  It is hard to envision further success than the outcome Plaintiffs achieved in this case.

There are two additional reasons adjustments are often made: the ongoing exercise of billing judgment, and the willingness of Plaintiffs' counsel to agree to an across-the-board good-faith reduction.  Neither is strictly necessary here.  "A fee applicant must exercise billing judgment by excluding 'excessive, redundant, or otherwise unnecessary [hours].'"  *Austin*, 2023 WL 7932477, at *5 (quoting *Hensley*, 461 U.S. at 434).  Plaintiffs' attorneys have already done exactly that.  They have carefully and to the best of their ability eliminated duplicative time entries, as well as entries for non-legal and other extraneous tasks.  *See* Hallward-Driemeier Decl. ¶ 16; Agarwal Decl. ¶ 16.  In an effort to avoid unnecessary litigation over fees, Plaintiffs' counsel have already reduced an initial roughly 2,290 hours to 1,678.5 requested hours through the exercise of billing judgment, representing an ***overall reduction in billed hours of 26.7%***.  *See* Hallward-Driemeier Decl. ¶ 17 (reducing roughly 1,390 overall hours to 1,136.0 requested hours, a reduction of 18.3%); Agarwal Decl. ¶ 16 (reducing roughly 900 overall hours to 542.5 requested hours, a reduction of 39.7%). Notwithstanding Plaintiffs' attorneys' other measures to exercise appropriate billing judgment, Plaintiffs also understand that a further reduction in fees may be warranted as a reasonable exercise of billing judgment.  Thus, in spite of the fact that Plaintiffs' counsel have gone through the billing entries multiple times and significantly reduced their bills, as demonstration of good faith Plaintiffs are willing to implement a modest 5% further reduction across the board

-27-

to fees.  As a result, a summary of the total fees is presented here in Table 2, including the voluntary, good-faith reduction by Plaintiffs.

**Table 2: Total Fees**

| Name | Firm | Number of Hours | Hourly Rate | Total Fees |
|---|---|---|---|---|
| Douglas Hallward-Driemeier | Ropes & Gray | 155.8 | $775 | $120,745 |
| Amy Jane Longo | Ropes & Gray | 124.6 | $750 | $93,450 |
| Shalini Goel Agarwal | Protect Democracy | 323.7 | $650 | $210,405 |
| Rachel Goodman | Protect Democracy | 36.7 | $600 | $22,020 |
| John Langford | Protect Democracy | 30.5 | $550 | $16,775 |
| Sara Chimene-Weiss | Protect Democracy | 85.9 | $550 | $47,245 |
| Phillip Yao | Ropes & Gray | 414.6 | $400 | $165,820 |
| Nathalia Sosa | Ropes & Gray | 142.7 | $400 | $57,080 |
| Jason Claman | Ropes & Gray | 19.4 | $200 | $3,880 |
| Summer Associates | Ropes & Gray | 253.4 | $150 | $38,002 |
| Ropes & Gray Paralegals | Ropes & Gray | 25.6 | $150 | $3,840 |
| Protect Democracy Paralegals | Protect Democracy | 65.7 | $150 | $9,835 |
| **Total Ropes & Gray** | Ropes & Gray | 1,136.0 | | $482,817 |
| **Reduced Total for Ropes & Gray (5% Reduction)** | Ropes & Gray | | | **$458,676** |
| **Total Protect Democracy** | Protect Democracy | 542.5 | | $306,280 |
| **Reduced Total for Protect Democracy (5% Reduction)** | Protect Democracy | | | **$290,966** |

| Grand Total | | 1,680.6 | | $789,097 |
|---|---|---|---|---|
| Reduced Grand Total (5% Reduction) | | | | **$749,642** |

In sum, Plaintiffs' attorneys and other timekeepers from Ropes & Gray request 1,136.0 hours, and their attorneys and timekeepers from Protect Democracy request 542.5 hours, in connection with litigating this case over the course of two years both in this Court and at the Eleventh Circuit (and back to this Court). Accordingly, Plaintiffs seek $458,676 in attorney's fees for work conducted by Ropes & Gray on their behalf, and $290,966 in attorney's fees for work conducted by Protect Democracy on their behalf.

## IV.   Plaintiffs Seek Reasonable Costs and Expenses.

Under Federal Rule of Civil Procedure 54(d)(1), "costs—other than attorney's fees—should be allowed to the prevailing party." Such costs are listed in 28 U.S.C. § 1920, while 28 U.S.C. § 1988 allows prevailing parties to collect additional expenses beyond those covered by Section 1920. *See Dowdell v. City of Apopka*, 698 F.2d 1181, 1188-89 (11th Cir. 1983) ("Under the statutory authority of section 1988, courts in this circuit have long awarded expenses as part of the costs in civil rights litigation . . . . Where cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d) and 28 U.S.C. §§ 1920 and 1923(a) do not apply."). As the Eleventh Circuit has explained, "[r]easonable attorneys' fees under

[Section 1988] *must* include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation." *Id.* at 1190 (emphasis added). Prevailing parties may thus recover "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988," and "the standard of reasonableness is to be given a liberal interpretation." *Id.* at 1192.

The Eleventh Circuit has specified that "[e]xpenses, which include travel costs, telephone, and postage expenses, fall within the purview of § 1988 . . . and may be reimbursable in addition to costs under § 1920." *Thompson v. Smith*, 805 Fed. App'x 893, 910 n.6 (11th Cir. 2020) (citing *Dowdell*, 698 F.2d at 1190-92); *see also Prison Legal News*, 411 F. Supp. 3d at 1219 ("Reasonable expenses may include travel, meals, lodging, photocopying, computer legal research, postage, courier services, and expert witnesses."); *Evans v. Books-A-Million*, 762 F.3d 1288, 1299-1300 (11th Cir. 2014) (noting, in the ERISA context, that "expenses for mediation, legal research, postage and travel may be awarded as attorneys' fees if the district court determines they were reasonably incurred in the course of case preparation, settlement, or litigation").

In accordance with applicable case law, Plaintiffs here largely request reimbursement of computer legal research and travel expenses. Consistent with the above-referenced cases permitting legal research expenses, Westlaw and Lexis

expenses in particular are recoverable.  *See River Cross Land Co., LLC v. Seminole Cnty.*, No. 6:18-cv-1646, 2022 WL 20622333, at *19 (M.D. Fla. Dec. 12, 2022) (awarding in full "expenses associated with legal research on Westlaw and Lexis/Nexis" where the "individuals listed in the supporting documentation as conducting the legal research are the same timekeepers identified on . . . attorney time records, and the dates of the research coincide by and large with time entries that list legal research as a compensable task").

Travel costs (in addition to the travel time billed) are also a recoverable expense here.  The Eleventh Circuit has explained that "the exclusion of out-of-town counsel's travel time is proper only if it was unreasonable not to hire qualified local counsel."  *Johnson v. Univ. Coll. of Univ. of Ala.*, 706 F.2d 1205, 1208 (11th Cir. 1983)).  Given the complexity in this case and the need for experienced counsel, Plaintiffs did not act unreasonably in relying on experienced out-of-state attorneys. This case involved an issue of first impression, for reasons explained above, *see* Section II *supra*, as well as the fact that Florida was one of the first states to attempt to enact the sort of anti-DEI legislation that has since started to proliferate across a number of other states.  Moreover, "the district courts in this Circuit have regularly held that reasonable travel time is compensable at a regular hourly rate."  *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1290 (M.D. Fla. 2000) (collecting cases).  Plaintiffs have reasonably billed only the travel time and expenses for the

two attorneys (Hallward-Driemeier and Agarwal) who jointly argued the two oral arguments: one before this Court and one before the Eleventh Circuit. *See* Hallward-Driemeier Decl. ¶ 16; Agarwal Decl. ¶ 16. The requested travel (and related expenses) was therefore limited in scope and reasonably necessary to the resolution of this case.

Plaintiffs request, and have provided documentation for, $32,128 in reasonable costs/expenses for their counsel Ropes & Gray, and $2,641 in reasonable costs/expenses for their counsel Protect Democracy. *See* Hallward-Driemeier Decl, Ex. A; Agarwal Decl., Ex. A.

Finally, Plaintiff's fees expert, Richard E. Johnson, also expended 8.5 hours preparing his supporting declaration and making further revisions thereto after requesting further information from Plaintiffs' counsel. *See* Johnson Decl. ¶ 45. As his declaration notes, Mr. Johnson's typical rate for similar work is $750 per hour, for a total of $6,375. *See id*. Plaintiffs therefore additionally request $6,375 for their fees expert, whom Plaintiffs were required to engage under the local rules to aid this Court in resolving this Motion. *See* N.D. Fla. Loc. R. 54.1(E)(2) (requiring a "declaration of an independent attorney addressing the reasonableness of the claimed time and rates"); 42 U.S.C. § 1988(c) ("In awarding an attorney's fee . . . the court, in its discretion, may include expert fees as part of the attorney's fee.").

## CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that this Court grant their Motion and award Plaintiffs $458,676 in fees and $32,128 in costs/expenses for their counsel Ropes & Gray; $290,966 in fees and $2,641 in costs/expenses for their counsel Protect Democracy; and $6,375 for their fees expert, Richard E. Johnson.  These reasonable amounts represent the fees and costs/expenses incurred as of the date of this filing, September 27, 2024.

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Northern District of Florida Local Rule 7.1(F), the undersigned counsel hereby certifies that Plaintiffs' Motion to Determine Amounts of Attorney's Fees and Costs and Incorporated Memorandum of Law, including body, headings, quotations, and footnotes, and excluding those portions exempted by Local Rule 7.1(F), contains 7,960 words as measured by the Microsoft Word word-processing software.

## LOCAL RULE 7.1(B) CERTIFICATION

Pursuant to Northern District of Florida Local Rule 7.1(B), counsel for Plaintiffs have conferred with counsel for Defendants regarding the relief sought in this Motion.  Counsel for Plaintiffs recognize that pursuant to Northern District of Florida Local Rule 7.1(G), after counsel for Defendants file their "opposition to the motion to determine the fee amount, the attorneys must confer again in a good-faith

effort to resolve the dispute" and "must file a notice of whether they have reached any agreement" within 14 days of the filing of the opposition.  Should an agreement fail to be reached, Plaintiffs reserve the right to file a reply memorandum responding to the arguments in Defendants' opposition, along with a supplemental fees-and-costs request relating to work conducted since the filing of this Motion.

Dated: September 27, 2024            Respectfully submitted,

By: */s/ Shalini Goel Agarwal*

Shalini Goel Agarwal
Fla. Bar No. 90843
THE PROTECT DEMOCRACY PROJECT
Pennsylvania Ave., NW, Suite 163
Washington, DC  20006
(202) 579-4582
shalini.agarwal@protectdemocracy.org

Douglas Hallward-Driemeier (*pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 20006-6807
Tel: (202) 508-4776
Douglas.Hallward-
Driemeier@ropesgray.com

Amy Jane Longo (*pro hac vice*)
ROPES & GRAY LLP
10250 Constellation Blvd.
Los Angeles, CA 90067
Tel: (310) 975-3269
Amy.Longo@ropesgray.com

***Counsel for Plaintiffs***

-34-